UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PATRICK MOZEE, | ) | |
| Institutional ID No. 1448936, | ) | |
| SID No. 05995706, | ) | |
| Previous TDCJ Nos. 860983, 884424, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-268-BG |
| GARY GRIGGS, | ) | ECF |
| Warden, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.  Introduction**

Appearing *pro se* and *in forma pauperis*, Plaintiff Patrick Mozee filed this action pursuant to 42 U.S.C. § 1983 complaining that Defendants, officials employed by the Texas Department of Criminal Justice (TDCJ), violated his constitutional rights during his incarceration at the Preston E. Smith Unit ("Smith Unit"). Mozee filed a second complaint the same month he filed the instant action and the United States District Court consolidated the two actions. The court then transferred the consolidated case to the United States Magistrate Judge for further proceedings. The order directed that the case be transferred back to the docket of the United States District Court if either the plaintiff or a defendant did not consent to proceed before this court. The United States Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and offered Mozee an opportunity to consent to the jurisdiction of the United States Magistrate Judge. Mozee did not consent to proceed before the Magistrate Judge. After reviewing Mozee's complaint, his testimony at the *Spears* hearing, authenticated records from TDCJ, and the

applicable law, this court recommends that the District Court dismiss Mozee's complaint pursuant to 28 U.S.C. § 1915.

## II. Standard of Review

The *in forma pauperis* statute, 28 U.S.C. § 1915, permits individuals who are not financially able to pay the court filing fee at the time of bringing their complaint to nonetheless file their complaint and pay the filing fee as "ability to pay allows." *Banos v. O'Guin*, 144 F.3d 883, 884-85 (5th Cir. 1998). The purpose of the statute is to "'guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs'" of litigation. *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 342, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). Thus, Congress enacted the statute to ensure judicial access to indigent individuals. *Denton*, 504 U.S. at 31. Congress also, however, recognized that an individual who is allowed to file complaints without cost, "'unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). In order to guard against abuse that may ensue from the filing of such lawsuits, Congress mandated a complaint filed *in forma pauperis* be dismissed if it is determined that the allegation of poverty is untrue or that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see Neitzke*, 490 U.S. at 324.

The court may dismiss a complaint brought *in forma pauperis* under the standard set forth in § 1915(e)(2) before service of process on the defendants. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009); *see also* 28 U.S.C. § 1915A (directing dismissal of claims brought by prisoners

against governmental entities or officers before service of process). The court has broad discretion in determining whether a complaint brought *in forma pauperis* should be dismissed and may dismiss such a complaint based on the plaintiff's allegations, testimony obtained at a hearing held pursuant to *Spears*, 766 F.2d at 181-82, and authenticated prison records. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (acknowledging that dismissals may be based on adequately identified or authenticated records).

III. **Allegations in Mozee's Complaint and His Testimony at the *Spears* Hearing**

Mozee names a number of Smith Unit officials as Defendants in his complaint including: Warden Griggs, Sergeant Leandro Gray, Sergeant Simon Acosta, Christal Thompson, Hillary Morales, Jesse Tovar, Jan Juanita Aynes, and Captain Roberto Gutierrez. Mozee brings claims of retaliation, failure to protect, and excessive use of force and requests declaratory relief and $5,000 in punitive damages as well as injunctive relief in the form of a transfer to protective custody at another prison. At the *Spears* hearing he testified that his life had been in danger since 2008 and that he wanted the court to order that he be placed in protective custody.[1]

In support of his request for a transfer, Mozee presents a two-fold claim. He contends that prison officials have retaliated against him by placing him at risk of attack by other inmates and that they have refused to place him in protective custody. Mozee specifically contends that prison officials have "spread lies" about him to inmates for the purpose of placing him at risk of harm. He claims, for example, that Warden Griggs has told prison guards that he is a "snitch" and that the prison guards have disseminated the lie to prison inmates. He also claims that prison guards have

---

[1] Mozee indicated at the *Spears* hearing that his desire for a transfer to protective custody is the reason he brought this action.

placed him in cells with inmates who are known to be his enemies for the purpose of having him attacked, and he claims that he is no longer able to go to recreation because prisoners who are members of various gangs have attacked him several times in the recreation yard. Mozee insisted at the *Spears* hearing that prison staff harass him and that they know that his life is in danger but they will not do anything to help him. He claims that prison officials have mistreated him and placed him at risk of harm for the purpose of retaliating against him because he has filed grievances and because he has encouraged other inmates to file grievances. In his last claim, Mozee alleges that Officers Gray, Acosta, Thompson, and Gutierrez used excessive force against him in December 2009.

## IV.     Background Facts

Examination notes in the authenticated records show that physicians have diagnosed Mozee with delusional disorder, persecutory type, and anti-social personality disorder with persecutory delusions and paranoia. The authenticated records also show that Mozee has written numerous grievances in which he complains of a "criminal conspiracy" among prison administration to harm him. He has claimed that officers have threatened to harm him and/or kill him and that they have threatened to contaminate his food. The only grievances Mozee has written in which he has complained about violent actions on the part of an inmate involve events that occurred on March 11, 2009, when he attacked his cellmate and officers used chemical agents to contain the situation.

## V.     Failure to Protect Claim

The Eighth Amendment imposes upon prison officials a duty to protect prisoners from violence at the hands of other inmates. *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002) (citing

4

*Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An inmate alleging that prison officials have failed to protect him must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials have acted with deliberate indifference to his need for protection. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 837). An officer acts with deliberate indifference only if he is aware of an excessive risk to the inmate's safety and disregards the risk. *Longoria*, 473 F.3d at 593. In order to show that the prison official was subjectively aware of a risk to the prisoner's safety, the prisoner may point to either direct evidence of the official's knowledge or circumstantial evidence that would show that the official must have known about the risk. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Mozee has pointed to no evidence that would show that he was incarcerated under conditions posing a substantial risk of serious harm or that Defendants were aware of such a situation. He alleges that members of prison gangs have attacked him on the recreation yard and in his cell and that he has suffered cracked and broken teeth, but he has not provided specific dates on which the attacks occurred and he testified that he never sought medical attention for the injuries he suffered as a result of the attacks. He claims that members of gangs have "pulled knives on him" in the recreation yard, but he also testified that he had never been cut with a knife after such threats. The authenticated records show that Mozee did not, in the time period relevant to the events he alleges in this action, file grievances reporting that he was actually attacked by other inmates.

Although the authenticated records from TDCJ show that Mozee has filed life endangerment claims in which he alleged that he feared he would be attacked by other inmates and that he believed his life was at risk, according to the records, he has not provided prison administration with

5

any information that would substantiate the allegations or that would provide prison administration with subjective knowledge of facts showing that Mozee was or is, in fact, at risk of harm. For example, on July 23, 2008, prison administration investigated Mozee's claim that his life was in danger, but the claim could not be substantiated. Prison administration nonetheless moved Mozee to a different cell. On October 7, 2008, prison administration investigated a similar complaint and placed Mozee in transient status during the investigation. It was noted that Mozee claimed that his life was in danger because his cellmate was a member of a gang and that he was in an argument with his cellmate about one of the cellmate's "boys." He claimed the cellmate made hand signs to other inmates instructing them to put a "hit" on him. In response to Mozee's claim, prison administration placed him in transient status and conducted an investigation. The officers who investigated Mozee's claim were unable to substantiate Mozee's claim, and the matter was forwarded to the prison classification committee. The committee recommended a change in housing for Mozee and he was thereafter placed in transient status and moved to a new cell. Ten days later, another investigator interviewed Mozee, and Mozee told the investigator that his life was again in danger, this time by unknown inmates on his hall. Although Mozee was offered an opportunity to provide the names and housing locations of the inmates he feared, he did not do so.

Mozee and his cellmate fought in their cell on March 11, 2009, and Mozee thereafter reported that he again believed his life to be in danger. During the investigation Mozee said he did not want to cooperate with the investigation and that "the wall" told him to fight with his cellmate. His cellmate claimed Mozee assaulted him and that he (the cellmate) was defending himself. It was concluded that the altercation was not gang-related, and that Mozee's life was not in danger. Two days later on March 13, 2009, Mozee claimed he believed his life was in danger because the

6

cellmate in his new cell threatened him. Prison administration moved Mozee to a different cell with another inmate and conducted another investigation. Five days later on March 18, 2009, Mozee claimed again that his life was in danger and that the cellmate in his new cell — his third cellmate in seven days — threatened him by telling him that he would kill him if he did not leave the cell. Prison administration investigated and concluded that no evidence supported Mozee's allegations. It was noted that Mozee "continued to make the same allegations" about all of his cellmates. Almost one month later on April 14, 2009, Mozee put forth the same claim against a different cellmate, alleging that his new cellmate had threatened him and that he believed his life was in danger. Prison administration moved Mozee to a new cell, investigated his allegations, and referred the matter to the prison's classification committee.

Mozee has not claimed, and the authenticated records do not show, that prison officials failed to investigate his allegations that his life is in danger, and without such a showing, the court should not find that prison officials have acted with deliberate indifference toward Mozee. Although Mozee may have been involved in altercations with other inmates, prison officials are not expected to prevent all inmate-on-inmate violence. *Adames*, 331 F.3d at 512 (citing *Farmer*, 511 U.S. at 834). The authenticated records demonstrate a pattern of Mozee claiming endangerment and prison officials responding by moving Mozee from the situation he has complained of and investigating his claims. Rather than ignoring the risk of harm Mozee has perceived and reported, prison officials have taken reasonable steps to abate the possibility of danger. Such conduct demonstrates responsive action rather than deliberate indifference that would subject Defendants to liability. *See Farmer*, 511 U.S. at 844 (prison officials who respond reasonably to a risk, even if the harm is not ultimately averted, cannot be found liable under the Eighth Amendment).

7

Mozee's complaint and his testimony at the *Spears* hearing center around his belief that he is entitled to placement in protective custody and his dissatisfaction with prison officials' refusal to place him in protective custody. Mozee's disagreement with his classification does not provide grounds sufficient to support a constitutional violation. *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("an inmate's disagreement with a classification is insufficient to establish a constitutional violation"). A prisoner's classification is a matter within the discretion of prison officials; decisions regarding prisoner classification are given the "widest possible deference" and are generally free from judicial intervention. *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) (citations omitted). "Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998), *abrogated on other grounds*, *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed. 958 (2001). None of Mozee's allegations regarding his classification demonstrate an abuse of discretion, and authenticated records from TDCJ support this conclusion. In fact, the authenticated records show that prison officials have undertaken numerous investigations and that the prison classification committee has reviewed the investigations and made decisions that were intended to ensure Mozee's protection. Mozee's failure to protect claim is without merit and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## VI. Retaliation Claims

Mozee's claim that Defendants have spread lies about him and caused his life to be in danger and have done so for the purpose of retaliating against him should be dismissed. A prisoner alleging retaliation must establish (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and

(4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). The prisoner must allege that but for the retaliatory motive, the complained of actions would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The plaintiff cannot merely put forth conclusory allegations but must produce direct evidence or allege a chronology of events from which retaliation might be inferred. *Id*. Mozee's conclusory allegations do not demonstrate that any of the Defendants intended to retaliate against him because he exercised his constitutional right to file grievances. In fact, his testimony belies his allegations. He testified that he was not sure of Defendants' motives for placing him at risk of harm. He testified that prison staff did not retaliate against other prisoners who file grievances: he specifically testified that prison staff are "not after the other guys who file grievances." Although Mozee insisted that prison staff harass him purposefully, he also stated that he did not know why prison staff had targeted him for such treatment. He claimed that Defendants must have "hatred in their hearts" for him, but he claimed he was not sure why they had targeted him for mistreatment.

Mozee's testimony does not support a finding of retaliatory intent on the part of Defendants; he has pointed to no direct evidence of motivation on the part of Defendants; and he has not alleged a chronology of events from which retaliation could plausibly be inferred. His claim of retaliation should therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

**VII.    Use of Force Claim**

Mozee claims Christal Thompson arranged for officers to "jump" on him outside of his cell and claims that Thompson "sweet talked" him out of his cell so that the attack could occur. He claims that Sergeant Acosta jumped on him and sprayed chemicals on him, Officer Aynes kicked him while he was in hand-restraints, Sergeant Gray slapped him, and Captain Gutierrez punched him

9

and kicked him while he was in hand-restraints. At the *Spears* hearing Mozee claimed that the attack occurred in December 2009 and that he suffered a bruised and swollen eye from the attack. He also testified that he did not seek medical attention for the injury. Mozee attached declarations from two inmates to the complaint he filed in 5:09-CV-272, the action that was consolidated with the instant action. In one of the declarations, an inmate claims that he saw officers escorting Mozee to his cell and noticed that his eye was "black puffy." The other inmate states that Mozee was removed from his cell on December 10, 2009, and was returned to his cell with a bruise under his left eye.

The foregoing is the only information before the court concerning Mozee's excessive force claim. The authenticated records from TDCJ do not include any record of the incident Mozee claims occurred in December 2009. There are no such records in the records from the Office of Inspector General or in the classification records or in the grievance records. Likewise, the medical records contain no indication that Mozee suffered any injury in December 2009.

The Eighth Amendment proscribes the unecessary and wanton infliction of pain, which includes actions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Eighth Amendment protections, however, do not extend to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The United States Supreme Court has acknowledged that "'[n]ot every push or shove . . . violates a prisoner's constitutional rights.'" *Id*. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). The Court has further acknowledged that the extent of injury the inmate suffered is relevant to determining whether the force at issue violated the

Constitution. *Wilkins v. Gaddy*, — U.S. —, 130 S. Ct. 1175, 1178 (2010). The absence of a serious injury is a factor the court must consider. *Id*. The Fifth Circuit Court of Appeals has held that an inmate fails to state an excessive force claim when there is no physical injury or when the injury is extremely minor. *Brown Lippard*, 472 F.3d 284, 387 (5th Cir. 2006) (citations omitted). The inmate must provide proof of some injury. *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir. 1992). Such proof is absent in this case. Mozee's excessive force claim should therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## VIII. Recommendation

For the foregoing reasons, the undersigned recommends that the District Court dismiss Mozee's complaint and all claims alleged therein with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

## IX. Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: October 29, 2010.

_/s/ Nancy M. Koenig_
NANCY M. KOENIG
United States Magistrate Judge